IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHYLLIS EDWARDS | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | : | NO. 10-1088 |

**REPORT AND RECOMMENDATION**

M. FAITH ANGELL  April 5, 2011
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff Phyllis Edwards'[1] claim for disability insurance benefits (DIB) under Title II of the Social Security Act. Presently before this Court are the parties' pleadings, including Plaintiff's Memorandum of Law and the Commissioner's response.[2] On January 11, 2011, counsel presented oral argument. For the reasons which follow, I recommend that the relief sought by Plaintiff be granted and that this matter be remanded to the Commissioner for further review consistent with this Report and Recommendation.

## II. BACKGROUND AND PROCEDURAL HISTORY

Ms. Edwards was born on August 8, 1960. *Administrative Record*[3] at 5, 91-92, 139-140.

---

[1] In the Record, Plaintiff is also referred to as Phyllis Batten.

[2] The Record; a Complaint; an Answer; Plaintiff's Memorandum of Law, and Defendant's Response to Request for Review of Plaintiff have been filed and reviewed in this action.

[3] Hereinafter the "Record".

She has a GED plus additional training as a certified nursing assistant and past work experience as a certified nursing assistant and dietary aide. *Record* at 15, 25-26. The Vocational Expert (VE) identified the nursing assistant job as semi-skilled and medium duty. The dietary aide position was identified as unskilled, medium duty. *Record* at 48. Plaintiff alleges an onset disability date of June 16, 2007, arguing that she is disabled as a result of a pinched nerve in her back, meniscus tear of the left knee, asthma, high blood pressure, gastrointestinal reflux disease, and kidney stones. *Plaintiff's Memorandum of Law*[4] at 2.

Ms. Edwards filed an application for DIB benefits on November 8, 2007.[5] *Record* at 10, 91-92, 110-112. The claim was initially denied on April 18, 2008, and a request for a hearing was timely filed.[6] *Record* at 10.

A Hearing was held on May 4, 2009, before Administrative Law Judge (ALJ) Richard A. Kelly in Philadelphia, Pennsylvania. *Record* at 10, 20-57. Ms. Edwards testified, represented by her attorney, Robert Petruzelli, Esquire. Agnes Gallen testified as a VE. On May 20, 2009, the ALJ issued a decision in which he found that Plaintiff has the following severe impairments: lumbar degenerative disc disease, status post left knee medial meniscus surgery, mild carpal tunnel syndrome right wrist, and obesity. The ALJ also found that:

> [plaintiff's] cervical DDD is not severe as, with an August 2007 MRI of her cervical spine that was normal, it does not significantly limit her ability to do basic work activities. Also, [plaintiff] has been recently diagnosed with gout, but [he found] that it is not severe as it does not meet the durational requirement that an impairment must last for a continuous period of at least 12 months (20 CFR 404.1509).

---

[4]Hereinafter "Plaintiff's Memo".

[5]Ms. Edwards previously applied for benefits in January, 2002; however, they were denied at the initial level of administrative review. *Record* at 110-111.

[6]This matter was a disability redesign prototype case. The Commissioner randomly selected this case to test eliminating the reconsideration level of review. *See* 20 C.F.R. §404.906(a). Consequently, Plaintiff could request a hearing without first requesting reconsideration. *Record* at 58; *see also Defendant's Response to Request for Review of Plaintiff* at 2 n. 2.

3

*Record* at 12. He further found that Ms. Edwards was not disabled because she had the residual functional capacity (RFC) to perform between sedentary and light work. *Record* at 13. Ms. Edwards sought review by the Appeals Council, which was denied on January 13, 2010. *Record* at 1-3. On March 12, 2010, Plaintiff filed this action alleging that the Commissioner's final decision denying benefits is not in accordance with the law and is not supported by substantial evidence.

### III. SOCIAL SECURITY DISABILITY LAW

#### A. Disability Determination

The Social Security Act authorizes several classes of disability benefits, including DIB benefits. In order to qualify for benefits, a claimant must be classified as "disabled" under the Act and the accompanying regulations.

To establish a disability under the Social Security Act, a claimant must show that there is some "medically determinable basis for an impairment that prevents him from engaging in any "'substantial gainful activity' for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (*quoting Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); 42 U.S.C. §423(d)(2)(A).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether or not a claimant is under a disability. 20 C.F.R. §404.1520. Step one states that an individual who is working will not be found to be disabled regardless of medical findings. 20 C.F.R. §404.1520(b). Step two involves evaluating severe impairments. 20 C.F.R. §404.1520©. Step three requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1. 20 C.F.R. §404.1520(d). Step four states that if an individual can perform past relevant work, he will not be found to be disabled. 20 C.F.R. §404.1520(e). Step five requires that if an individual cannot perform past relevant work, other factors must be considered to determine if other work in the national economy can be performed. 20 C.F.R. §404.1520(f). *See e.g. Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d

Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *Plummer,* 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the record. *Torres v. Harris*, 494 F.Supp. 267, 301 (E.D. Pa. 1980), *aff'd.* 659 F.2d 1071 (3d Cir. 1981).

### B. Judicial Review of Disability Decisions

The role of this Court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision. *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. *Id.*

It is not the role of this Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. *See e.g. Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this Court, the Commissioner's factual determinations, if supported by substantial evidence, shall be conclusive. The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence. *Fargnoli*, 247 F.3d at 38 (3d Cir.2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")

### IV. THE ALJ'S DECISION

At the May 4, 2009, Hearing, the ALJ received medical evidence, heard Plaintiff's testimony and received testimony from a VE. After considering all the evidence of record, the ALJ concluded that Ms. Edwards was not under a disability within the meaning of the Social Security Act from June 16, 2007, through the date of his decision. *Record* at 16. The ALJ found:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2012.

2. [Plaintiff] has not engaged in substantial gainful activity since June 16, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: lumbar degenerative disc disease (DDD), status post left knee medial meniscus surgery, mild carpal tunnel syndrome (CTS) right wrist, obesity (20 CFR 404.1520©).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that [plaintiff] has the residual functional capacity to perform between sedentary and light work as defined in 20 CFR 404.1567(b), as she is only able to walk/stand for 4 hours, sit for 8 hours in an 8-hour workday, except she must avoid constant use of her hands for grasping, pushing/pulling and/or fine manipulation, and must avoid squatting.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on August 28, 1960 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 16, 2007 through the date of this decision (20 CFR 404.1520(g)).

*Record* at 10-17. In evaluating the medical evidence, the ALJ determined:

> Renee Sharf, M.D., a physiatrist, saw [plaintiff] on July 9, 2007. She noted that [plaintiff] injured herself in a slip and fall on June 16, 2007. Upon examination, she found that [plaintiff] had limited cervical range of motion and tenderness over the cervical paravertebrals. She had decreased sensation in the L5-S1 dermatome of the left lower extremity as well as tenderness over the thoracic and lumbar paravertebrals. There was some tenderness noted in the medial aspect of the left knee. She had decreased sensation in all fingers of the right hand. Dr. Sharf diagnosed contusion of the left knee, cervical, thoracic and lumbar sprain/strain, abnormal sensation in the right hand and L5-S1 dermatome of the left lower extremity, left ankle strain and right wrist sprain. Subsequent to this examination, Dr. Sharf noted that an MRI of her left knee showed a tear of the posterior horn of the medial menicus. RMG/NCS was done and showed mild CTS. There were also signs of radiculopathy. MRI of the lumbar spine revealed minimal bilateral foraminal narrowing (Exhibit 1F).
>
> Steven Allon, M.D., an orthopedic surgeon, saw [plaintiff] on August 22, 2007. He noted her bilateral knee pain, right wrist and hand pain, low back pain, thoracic pain, numbness and tingling in both legs and right wrist. Upon examination, he noted with palpation of the lower thoracic spine and lumbosacral spine as well as pain at the extremes of motion. The doctor found positive Tinel's at the right carpal tunnel and a positive carpal compression test at the right carpal tunnel. The lower extremity sensation was decreased at the right lateral calf. [Plaintiff] had pain with palpation of the left medial meniscus area, and palpable swelling at the left anteromedial tibia. Consistent with the findings of the MRI of the left knee, [plaintiff] had intrarticular effusion as well as bone bruise of the left medial tibial plateau, with pain and swelling as the left medial tibial plateau. Dr. Allon noted that [plaintiff] weighed 245 pounds at a height of 64 inches. Dr. Allon diagnosed cervical and lumbosacral sprain and strain, left medial meniscus tear, left medial tibial proximal bone bruise, and right CTS. EMG/NCS was done on August 27, 2007 and it showed acute bilateral L5 radiculopathy. Dr. Allon referred [plaintiff] to Glenn Miller, M.D., anesthesiologist and pain management specialist, gave [plaintiff] lumbar spinal joint radiofluoroscopic steroid blocks of the L2-3, L3-4, L4-5 and L5-S1 facet joints bilaterally in 2008 (Exhibits 2F, 3F and 16F).
>
> John J. McPhilemy, D.O., an orthopedic surgeon, saw [plaintiff]. In an October 16, 2007 examination, he found a weakly positive Tinel's and Phalen's test right wrist. [Plaintiff] also had tenderness over the triangular fibrocartilage, and she had some diminished grip strength on the right compared to the left. Dr. McPhilemy diagnosed right CTS, left knee medial meniscal tear, rule out left wrist sprain. Dr.

7

> McPhilemy performed a transarthroscopic partial medial menisectomy, chondroplasty and debridement. Dr. McPhilemy saw [plaintiff] on September 16, 2008. He gave her the third and final Hyalgan injection in the left knee. Dr. McPhilemy also treated her with physical therapy. [Plaintiff] complained of ongoing intermittent pain, numbness and tingling in the media nerve distribution of the right hand. Dr. McPhilemy diagnosed mild right CTS, degenerative joint disease left knee, status post SALK, status post supplementation with Hyalgan, bilateral L5 radiculopathy, and cervical and lumbar strain and sprain (Exhibits 5F and 17F).
>
> Shahana Karim, M.D., conducted a consultative examination on March 12, 2008. Upon examination, she found that [plaintiff] had positive tenderness on the lumbar paraspinal area right more than left. [Plaintiff] had positive tenderness in the bilateral gluteal area. [Plaintiff] had decreased range of motion and tenderness. Dr. Karim diagnosed low back with radiculopathy, left knee pain, hypertension and asthma. The doctor gave an estimate of capability for the [plaintiff] lifting of 20 pounds occasionally, 10 pounds frequently, stand 1 hour, sit ½ hour, and no kneeling with occasional postural limitations (Exhibit 10F).
>
> . . . . .
>
> Neurological examinations have been normal. MRI only showed minimal bilateral L5 foraminal narrowing (Exhibits 1F and 13F). Physical therapy notes, in February 2008, reveal that her "knee pain [is] gone" (Exhibit 7F). EMG/NCS showed only mild CTS in her right wrist (Exhibit 1F).

*Record* at 13-15. When the ALJ went on to find that Ms. Edwards does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R, Part 404, Subpart P, Appendix 1, he further opined:

> [Plaintiff's] knee impairment does not meet Listing 1.02A because it is not characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) with chronic pain and stiffness with signs of limitation of motion or other abnormal motion, and findings on appropriate imaging of joint space narrowing, bony destruction, or ankylosis, resulting in inability to ambulate effectively.
>
> [Plaintiff's] lumbar spine impairment does not meet Listing 1.04A because it is not associated with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and a positive straight leg raising test (sitting and supine). This impairment also fails to meet Listing 1.04B, as it is not associated

with spinal arachnoiditis manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours. Finally, this impairment is not associated with lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively. Thus, Listing 1.04C is also not met.

*Record* at 12-13. Because he found that Ms. Edwards' physical impairments did not equal or meet the requirements of a Listing, the ALJ then determined whether or not Plaintiff retained the RFC to perform her past relevant work or other work existing in significant numbers in the national economy. After careful consideration of the record, the ALJ found that Ms. Edwards "has the residual functional capacity to perform between sedentary and light work as defined in 20 CFR 404.1567(b), as she is only able to walk/stand for 4 hours, sit for 8 ours in an 8-hour workday, except she must avoid constant use of her hands for grasping, pushing/pulling and/or fine manipulation, and must avoid squatting". *Record* at 13. In determining Ms. Edwards' RFC, the ALJ relied upon the following:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> In considering [plaintiff's] symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce [plaintiff's] pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce [plaintiff's] pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of [plaintiff's] symptoms to determine the extent to which they limit [plaintiff's] ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or

> other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> [Plaintiff] testified at the hearing that she has constant back pain. She complained that her knees go out on her every day and she is unable to walk for long periods of time. She stated that she is unable to lift anything. She reported that she is only able to sit for 15 to 20 minutes, the[n] she must get up and move around. She reported that she is only able to climb stairs with pain. [Plaintiff] said that she is unable to stoop. She claimed that she is generally unable to do household chores.

*Record* at 13. The ALJ also considered the medical evidence submitted by Renee Sharf, M.D., Steven Allon, M.D., John J. McPhilemy, D.O., and Shahana Karim, M.D., as mentioned above in this Report and Recommendation. *See also, Record* at 13-15. He further elaborates:

> After careful consideration of the evidence, the undersigned finds that [plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Neurological examinations have been normal. MRI only showed minimal bilateral L5 foraminal narrowing (Exhibits 1F and 13F). Physical therapy notes, in February 2008, reveal that her "knee pain [is] gone" (Exhibit 7F). EMG/NCS showed only mild CTS in her right wrist (Exhibit 1F). [Plaintiff's] recent treatment has been conservative in nature, with delineating the medications that she is prescribed at the hearing. At the hearing, [plaintiff] weighed 220 pounds. [Plaintiff] admitted in the record that she is able to take care of her personal needs, do at some household chores, drives, shops as well as reads and watches television (Exhibit 3E). Both Drs. McPhilemy and Allon found that [plaintiff] at least do a limited range of light work. However, I find no basis in the medical record that [plaintiff] with her only mild CTS could not use her hands on a repetitive basis as Dr. Allon opined that she could not (Exhibits 17F and 18F). These assessments are generally consistent with that made by the Disability Determination Service medical consultant who found that [plaintiff] could do light work with occasional postural limitations (Exhibit 12F). However, I do not find credible the assessment made by Dr. Karim, in that she found that [plaintiff] could only stand and walk for 1 hour or less and sit for less than 6 hours (and possibly only a half of an hour) in an 8-hour workday as I find no basis in the objective medical evidence for such limitations (Exhibit 10F).

*Record* at 13-15. The ALJ concluded that Ms. Edwards is unable to perform any past relevant work.

*Record* at 15.

Present by telephone at Ms. Edwards' hearing was VE Agnes Gallen. The ALJ noted that if Ms. Edwards had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rules 202.21 and 201.21. He further stated that Plaintiff's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. *Record* at 16.

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with [plaintiff's] age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as survey worker, with 800 jobs regionally and 250,000 jobs nationally; and ticket taker, with 1,000 jobs regionally and 85,000 jobs nationally.
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

*Record* 16. She was not found to have been under a disability, as defined in the Social Security Act, from June 16, 2007 through the date of the ALJ's decision. *Id.*

## V. DISCUSSION

The Plaintiff presents the following issues: 1) whether the ALJ improperly discounted her testimony of disabling pain and limitations; 2) whether the ALJ failed to properly determine her RFC; 3) whether the ALJ failed to properly evaluate and weigh the medical evidence of record; 4) whether the ALJ has failed to follow SSR 00-4p, and 5) whether the Administrative Record provides sufficient basis for an award of summary judgment in favor of Plaintiff. *Plaintiff's Memo* at iii.

Ms. Edwards states that "the ALJ failed to consider Plaintiff's obesity and its affect on the Plaintiff's RFC and thus on Plaintiff's ability to work on a regular and continuing basis in accordance with SSR 96-8p". *Id.* at 17. Based on the record before me, in light of Defendant's failure to fully evaluate Ms. Edwards' obesity in ascertaining her RFC, I do not find sufficient

11

evidence of record to support the Commissioner's decision that Plaintiff is not disabled and conclude that a remand is required.

Though Plaintiff did not allege that obesity prevented her from working[7], the ALJ did consider Ms. Edwards' obesity, finding it to be a severe impairment. *Record* at 12.

As the Honorable Timothy R. Rice opined:

> The ALJ must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." See SSR 02-1p, 67 Fed. Reg. at 57860. Additionally, the ALJ must assess "the combined effects of obesity and other severe impairments" when making a disability determination. *Diaz*, 577 F.3d at 503-04; *Rivera v. Comm'r of Soc. Sec.*, 320 Fed. Appx. 128, 130 (3d Cir. 2009); *Rutherford*, 399 F.3d at 552.
>
> Remand is required where a claimant alleges obesity, the ALJ finds obesity is a severe impairment, and the ALJ fails to evaluate obesity when determining the RFC. *See Diaz*, 577 F.3d at 504-06. The United States Court of Appeals for the Third Circuit has not addressed whether remand is necessary when the claimant does not assert obesity, the ALJ finds claimant's obesity is a severe impairment, but nevertheless fails to analyze the obesity and its effect on other impairments. For the following reasons, *Diaz* requires remand once the ALJ finds obesity is a severe impairment, but fails to analyze it, regardless whether claimant initially asserted it.
>
> First, *Diaz* requires a thorough analysis of all severe impairment. *Id.* Its holding suggests that once an ALJ characterizes obesity as a severe impairment, the ALJ must assess obesity and its effect on claimant's other impairments and work ability. *Id.* ("the ALJ having recognized obesity as an impairment should determine in the first instance whether, and to what extent, [claimant's] obesity, in combination with her asthma, diabetes, arthritis, back pain, and hypertension, impacted her work-place performance.") Second, SSR 02-1p directs an ALJ to analyze obesity in combination with other impairments, regardless whether the ALJ found obesity was a severe impairment. *See Rivera*, 320 Fed. Appx. at 130 (citing SSR 02-1p, 67 Fed. Reg. at 57860) (ALJ did not find obesity severe but nevertheless analyzed obesity in combination with other impairments). The ALJ is not required to discuss obesity if, however,

---

[7]Ms. Edwards alleged impairments of: pinched nerve in back, torn meniscus left knee, asthma, high blood pressure, gastroesophageal reflux disorder, stones, mild right carpal tunnel syndrome. *Record* at 58, 59-63, 113-120.

> the claimant does not identify obesity as an impairment, the ALJ does not cite it, and no evidence supports its effect on work-place performance. *Rutherford*, 399 F.3d at 552-53.
>
> Accordingly, when an ALJ finds obesity is a severe impairment, the ALJ must analyze its effect, individually, and in combination with claimant's other impairment, on her workplace function at every step of the sequential process. *See Diaz*, 577 F.3d at 504-05; *Zavilla v. Astrue*, 2009 WL 3364853, at *17-18 (W.D.Pa. Oct. 16, 2009) (although claimant did not assert obesity, the ALJ was required to consider obesity and its effect on other impairments because the ALJ acknowledged claimant's obesity was relevant in determining her work capacity); *cf. Rickabaugh v. Astrue*, 2010 WL 1142041 (W.D.PA. Mar. 24, 2010) (ALJ was not required to analyze obesity because claimant did not assert obesity and the ALJ did not expressly find that claimant's obesity was a severe impairment). An obesity analysis is especially important when the other impairments are musculoskeletal, respiratory, and cardiovascular impairments. *Diaz*, 577 F.3d at 504-05 (finding that claimant's obesity could exasperate these conditions).

*Ellis v. Astrue*, 2010 WL 1817246 *4-5 (E.D.Pa. April 30, 2010).

After finding that Ms. Edwards' obesity was a severe impairment, the ALJ failed to address obesity and its effect on her other impairments. As further noted by Magistrate Judge Rice, "[t]he ALJ's severity finding triggered an obligation to discuss [Plaintiff's] obesity, individually and in combination with diabetes, hypertension, and bilateral knee disorders". *Id.* at *5. The same can be said herein. The ALJ's severity finding in this matter also triggered an obligation to discuss Ms. Edwards' obesity, individually and in combination with her lumbar degenerative disc disease, status post left knee medial meniscus surgery, and mild carpal tunnel syndrome right wrist. Besides referencing Plaintiff's obesity in step three, the only references to Ms. Edwards' obesity are two sentences: "Dr. Allon noted that [plaintiff] weighed 245 pounds at a height of 64 inches" *(Record* at 14) and "[a]t the hearing, [plaintiff] weighed 220 pounds" (*Id.* at 15). There was no discussion regarding how Ms. Edwards' obesity affected her lumbar degenerative disc disease or her left knee. The ALJ did not explain how Plaintiff's obesity affected her ability to walk/stand for four hours and sit for eight hours in an eight-hour workday, as would be necessary with the RFC that the ALJ found

Ms. Edwards able to do. "It was legally insufficient to merely acknowledge an obligation to assess [Ms. Edwards'] obesity without further discussion or analysis." *Ellis,* 2010 WL1817246 *5 (E.D.Pa.). Consequently, I recommend that this matter be remanded to the Commissioner for further evaluation of Plaintiff's severe impairment of obesity.

## VI. **RECOMMENDATION**

Consistent with the above discussion, it is recommended that Ms. Edwards' request for review by GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this Report and Recommendation. The Commissioner may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. *See* Fed.R.Civ.P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. *See Leyva v. Williams*, 504 F.3d 357, 364 (3d Cir. 2007).

    S/M. FAITH ANGELL  
    M. FAITH ANGELL  
    UNITED STATES MAGISTRATE JUDGE

By Fax: April 5, 2011  
    Hon. Petrese B. Tucker    267-299-5072  
    Robert A. Petruzzelli, Esq.  856-429-7587  
    Eda Giusti, Esq.    215-597-4662